# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs March 25, 2015

## STATE OF TENNESSEE v. WILLY J. HALL

**Appeal from the Criminal Court for Sullivan County**
**No. S60722, S60723, S61900      Robert H. Montgomery, Jr., Judge**

---

**No. E2014-01156-CCA-R3-CD‒FILED‒MAY 13, 2015**

---

Willy J. Hall ("the Defendant") appeals the trial court's revocation of his community corrections sentences and order of incarceration. Although acknowledging that he violated the terms of his community corrections sentences, the Defendant nonetheless contends that it was improper for the trial court to revoke his sentences and order him to serve an effective seven-year sentence in the Department of Correction. Upon review, we affirm the trial court's revocation of the Defendant's community corrections sentences.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Stephen M. Wallace, District Public Defender, and Steven D. Bagby, Assistant District Public Defender, Blountville, Tennessee, for the appellant, Willy J. Hall.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Barry P. Staubus, District Attorney General; and Amy Hinkle, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

In June 2012, the Sullivan County Grand Jury indicted the Defendant for theft over $500 in case number S60722. That same month, the Defendant was also indicted for theft over $1,000; two counts of theft under $500; and three counts of burglary in case number

S60723.  In January 2013, the grand jury issued a third indictment in case number S61900, charging the Defendant with two counts of failure to appear.  On February 28, 2013, the Defendant pleaded guilty, as a Range II multiple offender, to all charges in case numbers S60722 and S60723 and to one count of failure to appear in case number S61900.

Pursuant to the Defendant's plea agreement, the trial court sentenced the Defendant, as follows:

| Case | Conviction | Sentence | Manner of Service |
|------|-----------|----------|-------------------|
| S60722 | Theft over $500 | 2 years at 35% | Community Corrections |
| S60723 | Theft over $1,000 | 5 years at 35% | Community Corrections |
| S60723 | Theft under $500 | 11 months 29 days | Community Corrections |
| S60723 | Theft under $500 | 11 months 29 days | Community Corrections |
| S60723 | Burglary | 5 years at 35% | Community Corrections |
| S60723 | Burglary | 5 years at 35% | Community Corrections |
| S60723 | Burglary | 5 years at 35% | Community Corrections |
| S61900 | Failure to Appear | 2 years at 35% | Community Corrections |

The trial court ordered all counts in case numbers S60722 and S60723 to run concurrently with one another but consecutively to case number S61900, for a total effective sentence of seven years on community corrections.  The court further ordered that the Defendant was to reside at the John R. Hay House ("Hay House") upon his release from jail.

*First Violation*

On August 15, 2013, the trial court issued a warrant for violation of community corrections that stated the Defendant had violated Rule 10 of the community corrections program, which provided, "I will reside at the John R. Hay House Residential/Correctional Treatment Facility as specifically directed by either the Court, Probation Officer or Counselor."  The affidavit in support of the warrant alleged that the Defendant signed out of Hay House at 11:00 a.m. on August 14, 2013, in order to report to work at Dairy Queen and take his son to a doctor's appointment.  The Defendant failed to return to Hay House after work, and his whereabouts were unknown at the time the violation was filed on August 15, 2013.  The community corrections program considered the Defendant "absconded from supervision."  The Defendant was not arrested on this violation warrant until October 14,

2013.

Following a hearing on November 12, 2013, the trial court found that the Defendant had violated the terms of his community corrections sentences by absconding. Pursuant to Tennessee Code Annotated section 40-36-106(e)(4), the trial court resentenced the Defendant to seven years on each of the burglary convictions and on his conviction for theft over $1,000, resulting in a total effective sentence of nine years. The court then reinstated the Defendant on community corrections and ordered that, upon the Defendant's release from jail, he was to "reside at the John R. Hay House Residential/Correctional Treatment Facility and/or the Day Reporting Center."

*Second Violation*

On April 17, 2014, the trial court issued a second warrant for violation of community corrections against the Defendant for violating Rule 10 of the community corrections program. The affidavit in support of the warrant alleged:

On or about 4/11/14, the [Defendant] reported to Hay House. He advised he was questioned by Detective Bobby Russell as a possible suspect in a rape allegation made by a 15 year old girl. On 4/14/14[,] after reviewing the Affidavit for a search warrant issued by Judge Conkin[,] it was decided that the [Defendant] should be brought back into residence for closer supervision pending the outcome of the rape investigation. On April 14, 2104[,] the [Defendant] was contacted by telephone and was ordered back to Hay House for supervision. The [Defendant] stated to Officer Joseph Harrigan that he would report at 2:00 p.m. that day. The [Defendant] has failed to report back to Hay House as instructed.

The Defendant was arrested on the warrant on May 8, 2014.

At a hearing on the violation warrant, the Defendant admitted that he did not report back to Hay House as instructed by his case manager. The Defendant explained that he called Hay House and informed the director, Dr. Walsh, that he was being investigated by police. Dr. Walsh initially advised the Defendant that, as long as he was not charged with a new offense, the Defendant would not be violated or be brought back into Hay House. Dr. Walsh directed the Defendant to report to his case manager as usual that Friday and to bring in a copy of the complaint against him. Dr. Walsh told the Defendant that they would "go from there." The Defendant testified that, when he reported, he gave his case manager a copy of the complaint against him and he passed a drug test. The Defendant's case manager told him, "Well, Dr. Walsh said as far as he's concerned about this pending case have the

detective come and talk to us on Monday and you'll be fine. You just continue to report."

On Monday, April 14, 2014, the Defendant's case manager called the Defendant's cell phone, which was in the possession of the Defendant's fiancée. The Defendant's fiancée called the Defendant at work and told him that Hay House had called and he needed to call them back. Around 4:00 p.m., the Defendant called Hay House and was told to report back. The case manager explained, "We want[] to bring you back in house and have closer supervision because of the fact of the nature of this pending investigation." The Defendant told the case manager that he could be there early the next morning. According to the Defendant, the case manager said that it was "already too late" for him to report because they had wanted the Defendant at Hay House by 2:00 p.m. that day.

The Defendant denied the allegation in the warrant that he told his case manager he would report by 2:00 p.m. Rather, the Defendant claimed that his case manager left a voice mail message, telling the Defendant to report by 2:00 p.m. The Defendant acknowledged that he failed to report that day and that he did not turn himself in on the violation warrant when it was issued. He continued to work for another two weeks so that his fiancée would have additional money to take care of the Defendant's two children. Two weeks later, the Defendant turned himself in on the violation warrant.

The Defendant testified that, since being moved into Phase 2 of the community corrections program on January 10, 2014, he had reported to Hay House every week, paid his supervision fees, and passed all of his drug tests. Additionally, he was in training for a job at Eastman Chemical. He testified that the job was very promising and that he was "lucky to get a hold of it." The Defendant explained that he has two children under two years old and takes "this parenting thing extremely serious." He stated that he had been cooperative with the police investigation and voluntarily informed Hay House about the investigation.

On cross-examination, the Defendant again denied telling his case manager that he would report to Hay House by 2:00 p.m. on April 14, 2014. He testified that his case manager spoke to his fiancée and advised her that the Defendant should report by 2:00 p.m. The Defendant acknowledged that he never reported to his case manager during the two weeks he worked before turning himself in on the violation warrant. The Defendant also admitted this was his second violation for not reporting to community corrections.

At the conclusion of the hearing, the trial court revoked the Defendant's community corrections sentences and ordered the Defendant to serve the balance of his sentences in case numbers S60722 and S60723 in the Department of Correction. The trial court placed the Defendant on supervised probation for his two-year sentence in case number S61900. This

timely appeal followed.

## Analysis

The Defendant contends that the trial court abused its discretion by revoking his community corrections sentences and ordering him to serve his sentences in confinement.[1] He asserts that the trial court's ruling is contrary to the stated purposes and goals of the Sentencing Reform Act of 1989 and that the record shows he has the "ability to fully participate and successfully complete the community corrections program." The State contends that the trial court properly ordered the Defendant to serve his sentences in confinement. We agree with the State.

The decision to revoke a community corrections sentence rests within the sound discretion of the trial court. State v. Harkins, 811 S.W.2d 79, 82-83 (Tenn. 1991) (applying the probation revocation procedures and principles contained in Tennessee Code Annotated section 40-35-311 to the revocation of a community corrections placement based upon "the similar nature of a community corrections sentence and a sentence of probation"). To establish an abuse of discretion, the defendant must show that there is no substantial evidence in the record to support the trial court's determination regarding the violation. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2000) (citing Harkins, 811 S.W.2d at 82). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." State v. Phelps, 329 S.W.3d 436, 443 (Tenn. 2010). The violation of probation or community corrections need only be proven by a preponderance of the evidence. See Tenn. Code Ann. § 40-35-311(e)(1) (2014); see also Tenn. Code Ann. § 40-36-106(e)(3)(B) (2014).

If the evidence is sufficient to show a violation of the terms of supervision, the trial court may, within its discretionary authority, revoke the community corrections sentence and require the defendant to serve his sentence in confinement "less any time actually served in any community-based alternative to incarceration." Tenn. Code Ann. § 40-36-106(e)(4) (2014). When the trial court does not alter the length, terms, or conditions of the sentence imposed, the court is not required to hold a sentencing hearing. See, e.g., State v. Samuels, 44 S.W.3d 489, 493 (Tenn. 2001) (observing that, before imposing "a new sentence" following a community corrections revocation, the trial court must conduct a sentencing hearing).

---

[1] The Defendant has not challenged the trial court's decision to place him on supervised probation in case number S61900.

-5-

In revoking the Defendant's community corrections sentences, the trial court found that the Defendant had violated the terms of community corrections by failing to report to Hay House as instructed. The Defendant admitted to the violation at the hearing, and he does not dispute the trial court's finding on appeal. Thus, there was sufficient evidence to support the trial court's finding of a violation of community corrections.

Before ordering the Defendant to serve his sentences in confinement, the trial court determined that Hay House did not arbitrarily set up the Defendant's reporting. The director of Hay House had concerns about the Defendant and asked him to come in and report. Furthermore, the court found that, after the violation warrant was filed, the Defendant knew about the warrant but did not turn himself in and deal with the issue. The court stated, "The choice [the Defendant] made was rather than deal with it and work with the community corrections program it was more important to go to work." The trial court also noted that the Defendant had a prior community corrections violation for the same behavior. The Defendant "went to work and then he just didn't come back . . . from August [2013] to October 14, [2013]." Based upon these considerations, we conclude that the trial court acted within its discretionary authority when it revoked the Defendant's community corrections sentences and ordered him to serve the balance of his sentences in confinement. See Tenn. Code Ann. § 40-36-106(e)(4). The Defendant is not entitled to relief.

## **Conclusion**

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE